# UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **HILDA L. SOLIS,** Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> **STEPHEN THOMAS**, individually and as a Trustee of the **GAGNE PRECAST CONCRETE PRODUCTS INC. EMPLOYEE STOCK OWNERSHIP PLAN**, <br><br> Defendant. | CIVIL ACTION <br><br> 1:11-cv-00326-JEJ <br> (Judge John E. Jones, III) |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

ELECTRONIC FILING

## ANSWER AND AFFIRMATIVE DEFENSES TO THE COMPLAINT

COMES NOW the Defendant, Stephen Thomas, individually and as a Trustee of Gagne Precast Concrete, Inc. Employee Stock Ownership Plan, by and though his attorney, Kevin Reed, and files the following Answer and Affirmative Defenses to the Complaint filed against him by the US Department of Labor.

1. The Secretary is charged with enforcing the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1191c. One of ERISA's goals is to ensure "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA § 2(a), 29 U.S.C. § 1001(a). To protect plan investments, ERISA requires that those who manage the investments act solely, exclusively and prudently in

1

the interests of plan participants.  ERISA §§ 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B). In addition, ERISA requires plan fiduciaries to comply with the terms of plan documents when to do so does not otherwise violate ERISA. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

**ANSWER:** The Defendant admits that the Secretary of Labor is charged with enforcing the Employee Retirement Income Security Act of 1974.  All other averments in Paragraph 1 are denied.

2. Title I of ERISA also creates per se prohibitions barring conflict of interest transactions between a plan and a party in interest. ERISA §§ 406-408, 29 U.S.C. §§ 1106-1108. Congress concluded that certain transactions present such a grave opportunity for abuse that, except in narrowly-defined circumstances, they should be prohibited. Thus ERISA bars fiduciaries from causing plans to engage in transactions with a party in interest. ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1). ERISA also prohibits a fiduciary from acting in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries. ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2). ERISA's prohibited transactions are subject to specified exemptions contained in ERISA § 408, 29 U.S.C. § 1108.

**ANSWER:** Paragraph 2 is denied.

3. When ERISA's strict fiduciary standards are not met, the Secretary has the authority to seek relief under ERISA §§ 409(a) and 502(a)(2) & (5), 29 U.S.C. §§ 1109(a) and 1132(a)(2) & (5), to restore plan losses, to recover unjust profits

and to obtain other remedial and equitable relief as the court may deem appropriate. The Secretary may also seek injunctions to prevent those who have violated their fiduciary duties from managing or providing services to employee benefit plans in the future.

**ANSWER:** Paragraph 3 is denied.

## JURISDICTION AND VENUE

4. This court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

**ANSWER:** Paragraph 4 is admitted.

5. Venue is appropriate in the Middle District of Pennsylvania pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because defendant Stephen Thomas resides

**ANSWER:** Paragraph 5 is admitted.

## BACKGROUND

6. This case involves Gagne Precast Concrete Products Inc. ("Gagne Concrete"), a company that was primarily engaged in the business of manufacturing and selling precast concrete products, landscaping materials and construction supplies. Gagne Concrete was based in Veazie, Maine. The company was a family owned business from the time of its incorporation in 1969 until February 2005. Gagne Concrete was a Maine corporation.

**ANSWER:** To the Defendant does not know if the company was a "family owned business" from 1969 to February 2005, otherwise this Paragraph is admitted.

<u>The 2005 Buyout Transaction</u>

7. In February 2005, defendant Stephen Thomas and at least one other individual orchestrated a leveraged buyout of Gagne Concrete. At the time of the buyout, defendant Stephen Thomas was a manager and owner of a private equity firm named ECG Equity Investors LLC ("ECG Equity"), which was based in Washington, D.C. ECG Equity's business model focused on the acquisition of companies through traditional and ESOP-based leveraged buyouts.

**<u>ANSWER:</u>** Paragraph 7 is admitted.

8. In 2004, Gagne Concrete's owner, Fred Gagne, was searching for a buyer to purchase his 100% equity interest in the company. ECG Equity approached Fred Gagne and proposed an acquisition deal that involved the creation of an ESOP (the "Gagne ESOP") to purchase 100% of the company's common stock (the "Buyout Transaction"). ECG Equity's proposal was for Gagne Concrete, which had very little long term debt at the time, to borrow the full amount necessary to finance the acquisition. This framework was acceptable to Fred Gagne, and in the summer of 2004 the parties tentatively agreed to a purchase price of $5,000,000.

**<u>ANSWER:</u>** Paragraph 8 is denied. The complete sequence of events and parties involved are not accurately alleged in this Paragraph.

9. In anticipation of the Buyout Transaction, defendant Stephen Thomas and at least one other individual, acting ostensibly on behalf of the Gagne ESOP, hired a valuation firm named Houlihan Valuation Advisors Inc. ("Houlihan") to perform a fair market value appraisal of 100% of the common stock of Gagne

Concrete (the "Houlihan Appraisal"). The purpose of the Houlihan Appraisal was to render an opinion as to whether the fair market value of the company's equity was at least equal to the predetermined purchase price of $5,000,000.

**ANSWER:** Paragraph 9 is admitted.

10. In the summer of 2004, ECG Equity entered into advanced negotiations with a commercial lender named National Cooperative Bank ("NCB") to finance the acquisition. However, the proposed financing with NCB fell through in late 2004 because ECG Equity and NCB were unable to finalize the terms of a loan agreement. ECG Equity immediately began to search for a substitute lender. In November 2004, ECG Equity reached an agreement with another commercial lender, Capital Source Finance LLC ("Capital Source"), to finance the acquisition. The terms of the Capital Source loan provided for interest rates and fees that were significantly higher than those proposed in the NCB financing arrangement.

**ANSWER:** Paragraph 10 is admitted.

11. The Buyout Transaction closed on February 18, 2005 (the "Closing Date"). The Gagne ESOP was established on the Closing Date pursuant to an ESOP plan document (the "Plan Document") and ESOP trust agreement (the "Trust Agreement"). The Gagne ESOP was established effective as of January 1, 2005.

**ANSWER:** Paragraph 11 is admitted.

12. Stephen Thomas was selected to serve as one of three trustees of the Gagne ESOP. On or about the Closing Date, Stephen Thomas was also named

President of Gagne Concrete and one of three members of company's Board of Directors.

**ANSWER:** Paragraph 12 is admitted.

13. The Buyout Transaction was consummated on the Closing Date pursuant to a stock purchase agreement entered into by Fred Gagne, the Gagne ESOP, ECG Equity and Gagne Concrete (the "Stock Purchase Agreement"). In accordance with the Stock Purchase Agreement, Fred Gagne received the following elements of consideration for his 100% interest in Gagne Concrete:

a) $3.9 Million Stock Purchase. The Gagne ESOP paid Fred Gagne $3,900,000 in cash at closing in exchange for all 1,000,000 outstanding shares of Gagne Concrete.

b) $958,265 in Seller Financing. Gagne Concrete executed a promissory note in favor of Fred Gagne for $958,265 in principal plus 5% in annual interest, payable over a 5-year term. This promissory note was also delivered at closing.

c) $586,597 Pre-Closing Cash Withdrawal. Fred Gagne was entitled to withdraw $586,597 in cash from Gagne Concrete immediately before closing. Fred Gagne withdrew most of this amount (at least $567,000) on or before January 22, 2005 (i.e. approximately 4 weeks before the closing date).

**ANSWER:** Paragraph 13 is admitted.

14. Gagne Concrete, the Gagne ESOP and Capital Source entered to a pass-through financing arrangement to finance the $3,900,000 million stock

purchase. The funds were borrowed in the first instance by Gagne Concrete pursuant to a loan Capital Source Loan"). The Capital Source Loan provided for an extension of credit in the maximum amount of $5,075,000.  Approximately $4,000,000 of this amount was disbursed on or about the Closing Date.  The Capital Source Loan included four separate loan facilities: a $2,000,000 revolving credit line (the "Credit Line"); a $1,275,000 machinery and equipment term loan (the "M&E Loan"); a $1,550,000 real estate term loan (the "Real Estate Loan"); and a $250,000 bridge loan (the "Bridge Loan"). Funds drawn on the Credit Line carried an annual interest rate equal to the prime rate plus 3.5%.  The M&E Loan and Real Estate Loan each carried an annual interest rate equal to the prime rate plus 5.25%. The Bridge Loan carried an annual interest rate equal to the prime rate plus 4%. The loan agreement provided for Gagne Concrete to pay various hefty fees, including a commitment fee, an unused credit line fee, a collateral management fee, and two equity participation fees worth 34% of the total enterprise value of the company.

**ANSWER:**  The last sentence of this paragraph is denied. All other averments in Paragraph 14 are admitted.

15. The funds borrowed from Capital Source were used to fund a $4,000,000  loan from Gagne Concrete to the Gagne ESOP (the "ESOP Loan"). The primary purpose of the ESOP Loan was to finance the ESOP's purchase of stock from Fred Gagne. The terms of the ESOP Loan were provided in a mirror loan agreement, which required, *inter alia*, that the ESOP repay the loan principal plus 13% in annual interest over a 10-year term.

**ANSWER:** Paragraph 15 is denied.

16. ECG Equity did not invest any equity into the company or incur any debt in connection with the Buyout Transaction; however, the firm received numerous benefits in the deal. ECG Equity received warrant rights worth 10% of the equity value of the company, and was paid at least $125,000 in transaction fees at closing. Gagne Concrete ECG Management Agreement"). Defendant Stephen Thomas was a manager and owner of ECG Advisors, LLC ("ECG Advisors"), which was a management consulting entity that worked with ECG Equity. The ECG Management Agreement provided for ECG Advisors to receive management fees in the annual amount of $150,000 plus certain additional expenses. The parties providing management services under this agreement (e.g. ECG Advisors, Stephen Thomas and/or other individuals) had no experience or specialized knowledge relating to the manufacture or sale of concrete, construction or landscaping products.

**ANSWER:** Paragraph 16 is denied.

17. Defendant Stephen Thomas and at least one other individual represented all of the following parties in the Buyout Transaction: the Gagne ESOP, ECG Equity and ECG Advisors. Stephen Thomas and at least one other individual negotiated and executed various transaction documents, including the Stock Purchase Agreement, on behalf of the Gagne ESOP, ECG Equity and/or ECG Advisors.

**ANSWER:** Paragraph 17 is denied.

18. Upon information and belief, Kevin Tracy, Gagne Concrete's general

manager, and other managers at Gagne Concrete, received warrant rights worth a total of 9% of the equity value of the company in connection with the Buyout Transaction.

**ANSWER:** Paragraph 18 is denied.

<u>Events Following the 2005 Buyout Transaction</u>

19. Upon information and belief, during the period of October 2005 to present, defendant Stephen Thomas was the sole active Director of Gagne Concrete, sole active officer of Gagne Concrete, sole active member of the ESOP Plan Committee and sole active trustee of the ESOP trust.

**ANSWER:** Paragraph 19 is denied.

20. Gagne Concrete contributed $476,666.67 to the Gagne ESOP as of December 31, 2005. This contribution resulted in the allocation of 64,662.7355 shares to the accounts of individual participants.

**ANSWER:** Paragraph 20 is denied.

21. On December 21, 2006, Gagne Concrete refinanced all of its outstanding debt by entering into a loan agreement with Bangor Savings Bank. The loan agreement provided for a $5,500,000 extension of credit. Approximately $4,700,000 million of this amount was disbursed at closing. The proceeds from the loan were used in part to retire the company's outstanding debt obligations to Capital Source and Fred Gagne.

**ANSWER:** Paragraph 21 is admitted.

22. In 2006, Stephen Thomas began misappropriating and/or diverting corporate assets away from Gagne Concrete without a legitimate business

purpose. The misappropriation and/or diversion of assets began on or about March 2006 and continued on a consistent basis until on or about May 29, 2008. The misappropriation and/or diversion of assets was accomplished by, among other means: authorizing cash transfers to ECG Equity and/or ECG Advisors in excess of the consideration due under the ECG Management Agreement; withdrawing cash directly from corporate accounts; seizing receivable checks that had been made payable to Gagne Concrete; authorizing excess compensation to himself through Gagne Concrete's payroll; and transferring assets to Frank L. Woodworth Inc. (a company that was under the control of Stephen Thomas and/or ECG Equity). In total, Stephen Thomas misappropriated and/or diverted at least $1,142,889.99 in assets away from the company without a legitimate business purpose.

**ANSWER:** Paragraph 22 is denied.

23. In January 2008, Gagne Concrete defaulted on its loan payments to Bangor Savings Bank. On or about May 29, 2008, Bangor Savings Bank exercised its default remedies under the loan agreement and seized the company's assets. On and after May 29, 2008, the bank ceased the company's business operations, liquidated its assets and terminated all of its employees.

**ANSWER:** Paragraph 23 is denied.

## THE DEFENDANT AND OTHER PARTIES

24. The Plaintiff Secretary is vested with authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution

of claims against fiduciaries and other parties who commit violations of ERISA. ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5).

**ANSWER:** Paragraph 24 is admitted.

25. At all relevant times**,** Gagne Concrete, was the sponsor of the Gagne ESOP, and a party in interest to the Gagne ESOP within the meaning of ERISA §3(14)(C), 29 U.S.C. §1002(14)(C). Fred Gagne owned 100% of the equity in Gagne Concrete at all relevant times prior to the Buyout Transaction. For the purpose of the Buyout Transaction, Fred Gagne was a party in interest to the Gagne ESOP within the meaning of ERISA §3(14)(E) and (H), 29 U.S.C. §1002(14)(E) and (H).

**ANSWER:** Paragraph 25 is denied.

26. At all relevant times, the Gagne ESOP was an employee pension benefit plan as defined in ERISA § 3(2), 29 U.S.C. § 1002(2).

**ANSWER:** Paragraph 26 is admitted.

27. Defendant Stephen Thomas was a trustee of the ESOP trust and a member of the ESOP Plan Committee at all times relevant to the Buyout Transaction.  Stephen Thomas continued to serve as a trustee of the ESOP trust and as a member of the ESOP Plan Committee through at least May 29, 2008. Stephen Thomas also served as a member of the Board of Directors and as President of Gagne Concrete from February 18, 2005 through at least May 29, 2008. During the time that he was a trustee of the ESOP trust and a member of the ESOP Plan Committee, Stephen Thomas was responsible for administering, managing, and protecting the assets of the ESOP. During the time he was a

member of the Board of Directors and/or ESOP Plan Committee, Stephen Thomas was also responsible for selecting, monitoring and removing the fiduciaries of the ESOP. Stephen Thomas was thereby a fiduciary of the ESOP in his capacity as a trustee of the ESOP trust, a member of the ESOP Plan Committee, and as a member of the Board of Directors pursuant to ERISA § 3(21), 29 U.S.C. § 1002(21). Stephen Thomas was also a party in interest to the ESOP within the meaning of ERISA § 3(14)(A) and (H), 29 U.S.C. §1002(14)(A) and (H).

**ANSWER:** Paragraph 27 is denied.

28. At all relevant times, the trustees of the ESOP trust had the authority to administer the ESOP trust, including the power to invest trust assets (primarily in employer stock), borrow money, bring legal actions on behalf of the ESOP, and generally do all acts necessary or desirable for the protection of the ESOP. The Board of Directors and/or ESOP Plan Committee had the authority to appoint the trustees of the ESOP trust; therefore, Gagne Concrete's Board of Directors and/or ESOP Plan Committee were also fiduciaries for purposes of appointing, removing and monitoring the trustees of the ESOP trust.

**ANSWER:** Paragraph 28 is denied. The Defendant is without sufficient knowledge at this time to make averments about the duties and authorities of the ESOP Plan Committee.

29. At all relevant times, the ESOP Plan Committee had authority to administer the Gagne ESOP and the ESOP trust. This authority included the power to direct the actions of the trustees of the ESOP trust in investing the

assets of the ESOP trust. The Board of Directors of the company had the authority to appoint the members of the ESOP Plan Committee; therefore, the Board of Directors was also a fiduciary for purposes of appointing, removing and monitoring the members of the Plan Committee.

**ANSWER:** Paragraph 29 is denied. The Defendant is without sufficient knowledge at this time to make averments about the duties and authorities of the ESOP Plan Committee.

## GENERAL ALLEGATIONS

30. At all relevant times, the ESOP was administered by the trustees of the ESOP trust and the ESOP Plan Committee. The trustees of the ESOP trust and the ESOP Plan Committee consisted of individuals appointed by Gagne Concrete's Board of Directors.

**ANSWER:** Paragraph 30 is denied. The Defendant is without sufficient knowledge at this time to make averments about the duties and authorities of the ESOP Plan Committee.

31. Pursuant to Section 4.1 of the Trust Agreement, the trustees of the ESOP trust were granted broad authority to administer the plan, including, without limitation, the power to: invest and manage trust assets, borrow money, initiate legal proceedings, and generally do all acts necessary or desirable for the protection of the Trust. Section 2.55 of the ESOP Plan Document provided for the trustees of the ESOP trust to be selected by Gagne Concrete's Board of Directors. Section 3.6 of the Trust Agreement further provided that Gagne

Concrete had the power to remove the trustees of the ESOP trust for any reason and to appoint a successor.

**ANSWER:** Paragraph 31 is admitted.

32. Pursuant to Section 2.41 of the Plan Document, the "Plan Committee" was "[t]he Committee appointed by the Board of Directors to administer the Plan." Section 10.1 of the Plan Document provided that, at least initially, the Board of Directors of the company was to serve as the Plan Committee. Section 10.1 of the Plan Document further provided that the ESOP Plan Committee was "the named fiduciary with authority to control and manage the operation and administration of the Plan." The Plan Document granted the Plan Committee broad authority to administer the plan, including, without limitation, the power to: direct the actions of the trustees of the ESOP trust in investing plan assets (Section 5.1); establish a funding policy and method for acquiring company stock (Section 5.1); direct the trustees of the ESOP trust to incur Acquisition Loans to purchase financed shares of employer stock or repay a prior Acquisition Loan (Section 5.2); select an independent appraiser and determine the Fair Market Value of employer stock (Section 10.3), and monitor the performance of the trustees of the ESOP trust (Section 10.3).

**ANSWER:** Paragraph 32 is admitted.

33. The Plan Document prohibited the Plan Committee and the trustees of the ESOP trust from entering into certain types of transactions that were pre-determined as being unfavorable to the ESOP. Pursuant to Section 5.2(a) of the Plan Document, an Acquisition Loan entered into by the ESOP was required to

"bear a reasonable rate of interest," and meet other specified conditions.
Likewise, Section 5.1(d) provided that the trustees of the ESOP trust were
permitted to purchase employer stock only if the price "[did] not exceed Fair
Market Value as of the date of purchase." Section 2.27 of the Plan Document
provided that "Fair Market Value" was to be determined by the Plan Committee
based on a valuation performed by an independent appraiser.

**ANSWER:** Paragraph 33 is admitted.

### ALLEGATIONS RELATING TO THE 2005 BUYOUT TRANSACTION

34. These allegations incorporate paragraphs (1) – (33).

**ANSWER:** The Defendant's answers to Paragraph (1) – (33) are incorporated by
reference.

35. Houlihan provided valuation services to the Gagne ESOP in relation to
the Buyout Transaction. In connection with these services, Houlihan prepared the
Houlihan Appraisal dated February 22, 2005.

**ANSWER:** Paragraph 35 is admitted.

36. The Houlihan Appraisal was flawed on its face, internally inconsistent,
contained obvious errors, and significantly overvalued the shares of Gagne
Concrete by, *inter alia*:

a) Performing a valuation analysis as of September 30, 2004 for a
transaction that was consummated on February 18, 2005.

b) Performing a valuation analysis using stale data. The data used in the
valuation analysis was more than seven months old. With respect to one

valuation calculation, Houlihan relied on asset and liability data that was more than thirteen months old.

c) Relying on a representation that materially overstated the net assets of the company at closing. Upon information and belief, defendant Stephen Thomas represented to Houlihan, and/or was aware of a representation to Houlihan by other fiduciaries of the Gagne ESOP, that the net assets of the company would be approximately $5.8 million at closing. This overstated the net assets of the company at closing by at least $1 million.

d) Using growth projections that were unreasonably optimistic and not supportable.

e) Using unreasonably low discount and capitalization rates to calculate the present value of future cash flows.

f) Relying on guideline transactions to establish market value when the guideline transactions and/or target companies were not comparable to the Buyout Transaction and/or Gagne Concrete. Failing to discuss and/or support the guideline transactions and their relevance to the Buyout Transaction.

**ANSWER:** Paragraph 36 is denied.

37. Defendant Stephen Thomas and the other fiduciaries of the Gagne ESOP knew that the ESOP was purchasing less than 100% of the equity value of the company as a result of warrant rights and other equity interests that were issued to Capital Source, ECG Equity and other persons, but either did not seek an appraisal of the actual equity value being purchased and/or did not provide

Houlihan with sufficient information to account for the actual equity value being purchased by the ESOP.

**ANSWER:** Paragraph 37 is denied.

38. Defendant Stephen Thomas and the other fiduciaries of the Gagne ESOP did not carry out a meaningful review of the Houlihan Appraisal and did not question Houlihan regarding the following: (a) a contradictory conclusion of fair market value in the transmittal letter for the Houlihan Appraisal; (b) Houlihan's reliance on guideline transactions without providing sufficient explanation or support; (c) Houlihan's use of unreasonable and unsupportable growth and risk assumptions; (d) Houlihan's reliance on an outdated financial analysis; (e) Houlihan's use of stale financial information; or (f) Houlihan's reliance on a representation that materially misstated the net assets of the company at closing. In addition, Stephen Thomas and the other fiduciaries of the Gagne ESOP failed to provide Houlihan with and/or failed to require Houlihan to use, financial information that was accurate, timely and complete, for the purposes of Houlihan's determination of fair market value.

**ANSWER:** Paragraph 38 is denied.

39. Due to the actions or inactions described above, Stephen Thomas knew or should have known that the Houlihan Appraisal should not have been relied upon to support the ESOP's purchase of stock in the Buyout Transaction.

**ANSWER:** Paragraph 39 is denied.

40. In relation to the Buyout Transaction, Stephen Thomas failed to discharge his fiduciary duties with respect to the Gagne ESOP solely in the

interests of the participants and beneficiaries and with the care, skill prudence and diligence under the circumstances prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and failed to act in accordance with plan documents, in violation of ERISA §§404(a)(1)(A),(B), and (D), 29 U.S.C. §§1104(a)(1)(A),(B), and (D) by, among other things,

a) not obtaining a valuation opinion that considered how warrant rights and other equity interests granted in connection with the Buyout Transaction affected the interests of the Gagne ESOP and the price paid by the Gagne ESOP for the stock of Gagne Concrete:

b) relying on a valuation of Gagne Concrete that was flawed on its face, internally inconsistent, contained obvious errors, and significantly overvalued the shares of Gagne Concrete because, among other factors, it (i) utilized a valuation analysis that was performed as of September 30, 2004 (more than 5 months before the transaction was consummated); (ii) utilized outdated and inaccurate financial information; (iii) utilized unreasonable and unsupportable growth and risk assumptions; and (iv) utilized market data from guideline transactions that were not comparable to the Buyout Transaction and/or failed to explain or support the use of these transactions;

c) failing to consider the merits of the stock purchase investment in light of the various other related transactions and agreements consummated in connection with the Stock Purchase Agreement, including, *inter alia*: (i) the

debt obligations, interest expense and fees incurred by Gagne Concrete to finance the Buyout Transaction; (ii) the warrant rights and other equity interests issued in connection with the Buyout Transaction, which had the potential to dilute the ESOP's percentage ownership of Gagne Concrete;

d) failing to secure a fairness opinion on behalf of the Gagne ESOP to evaluate the impact of the transactions and agreements described in paragraph 40(c), as well as the other transactions contemplated by the Stock Purchase Agreement, despite the fact that the ESOP's receipt of such an opinion was a closing condition under the Stock Purchase Agreement;

e) causing and/or allowing the Gagne ESOP to enter into a loan with an above-market interest rate of 13%; and

f) representing ECG Equity and ECG Advisors in the Buyout Transaction, which were parties whose interests were adverse to the interests of the Gagne ESOP.

**ANSWER:** Paragraph 40 is denied.

41. As a result of the actions and omissions set forth in paragraph 40(a) – (f), defendant Stephen Thomas caused and/or allowed the Gagne ESOP to pay more than adequate consideration for its equity interest in Gagne Concrete.

**ANSWER:** Paragraph 41 is denied.

42. Stephen Thomas, therefore, caused and/or allowed the Gagne ESOP to engage in transactions that he knew or should have known constituted direct or indirect transfers to or uses by or for the benefit of, a party in interest, of

assets of the Gagne ESOP in violation of ERISA §406(a)(1)(D), 29 U.S.C.

§1106(a)(1)(D).

**ANSWER:** Paragraph 42 is denied.

43. By the actions set forth in paragraph 40(f) defendant Stephen Thomas

acted in a transaction involving the plan on behalf of a party (or represent a

party) whose interests are adverse to the interests of the plan or the interests of

its participants or beneficiaries in violation of ERISA § 406(b)(2), 29 U.S.C. §

1106(b)(2).

**ANSWER:** Paragraph 43 is denied.

**ALLEGATIONS AS TO THE ONGOING FIDUCIARY**

**DUTIES OF STEPHEN THOMAS**

44. These allegations incorporate paragraphs (1)-(43).

**ANSWER:** The Defendant's answers to Paragraph (1) – (43) are incorporated by

reference.

45. In 2006, Stephen Thomas began misappropriating and/or diverting

corporate assets away from Gagne Concrete without a legitimate business

purpose. The misappropriation and/or diversion of assets began on or about

March 2006 and continued on a consistent basis until on or about May 29, 2008,

and included, without limitation, the following actions:

a) Defendant Stephen Thomas misappropriated and/or improperly

diverted corporate assets by causing Gagne Concrete to transfer cash to

ECG Equity and/or ECG Advisors in excess of the consideration due

under the ECG Management Agreement. Said transactions were not

supported by documentation that indicated that they were for legitimate business purposes.

b) Defendant Stephen Thomas misappropriated and/or improperly diverted corporate assets by withdrawing cash directly from corporate accounts. Said transactions were not supported by documentation that indicated they were for legitimate business purposes.

c) Defendant Stephen Thomas misappropriated and/or improperly diverted corporate assets by seizing receivable checks that had been made payable to Gagne Concrete. Said transactions were not supported by documentation that indicated that they were for legitimate business purposes.

d) Defendant Stephen Thomas misappropriated and/or improperly diverted corporate assets by causing Gagne Concrete to pay him excess compensation through the company's payroll. Said transactions were not supported by documentation that indicated that they were for legitimate business purposes.

e) Defendant Stephen Thomas misappropriated and/or improperly diverted corporate assets by causing Gagne Concrete to transfer assets to Frank L. Woodworth Inc. in excess of any business value or benefit to Gagne Concrete. Said transactions were not supported by documentation that indicated that they were for legitimate business purposes.

**ANSWER:** Paragraph 45 is denied.

46. The misappropriated and/or diverted amounts that were not documented as legitimate business expenses totaled at least $1,142,889.99.

**ANSWER:** Paragraph 46 is denied.

47. As a trustee of the ESOP trust, defendant Stephen Thomas had a fiduciary duty to protect plan assets (i.e. the value of Gagne Concrete's stock) from harm caused by his misappropriation and/or improper diversion of corporate assets. This duty included the obligation to evaluate whether it was in the interest of the ESOP to file a derivative lawsuit on behalf of the plan to challenge his misappropriation (as Director and President) of corporate assets. Stephen Thomas failed to evaluate whether it was in the interest of the ESOP to file a derivative lawsuit, nor did he consider taking any other action to protect the assets of the plan.

**ANSWER:** Paragraph 47 is denied.

48. By misappropriating and/or improperly diverting corporate assets, Stephen Thomas (in his role as Director) was liable to Gagne Concrete and/or its shareholders under Maine corporate law by, *inter alia*, (a) committing acts not in good faith, (b) committing acts that the he did not reasonably believe were in the company's best interest, (c) committing acts that lacked objectivity due to his conflict of interest, and/or (d) receiving a financial benefit to which he was not entitled. 13-C M.R.S.A. §§ 831-832.

**ANSWER:** Paragraph 48 is denied.

49. Maine corporate law enables shareholders (including their authorized

nominees) to bring derivative lawsuits on behalf of a corporation for damages and/or equitable relief, including, *inter alia*, the ability to petition a court to remove a director from office for cause. 13-C M.R.S.A. §§ 751-758, 809.

**ANSWER:** Paragraph 49 is denied.

50. Defendant Stephen Thomas knew or should have known that he was misappropriating and/or improperly diverting the assets of the company without a legitimate business purpose. Defendant Stephen Thomas also knew or should have known that these acts were in violation of his corporate fiduciary duties to Gagne Concrete and/or its shareholders, and were potentially the basis for a successful derivative lawsuit to obtain monetary and/or equitable relief on behalf of the ESOP.

**ANSWER:** Paragraph 50 is denied.

51. Stephen Thomas, as a member of the Board of Directors and ESOP Plan Committee, had a fiduciary duty to monitor the performance of the trustees of the ESOP trust (including himself). In these capacities, Stephen Thomas had an obligation to appoint a replacement trustee to ensure that a fiduciary evaluated whether it was prudent to file a derivative lawsuit on behalf of the plan. By failing to evaluate whether it was in the interest of the ESOP to file a derivative lawsuit, or appoint another trustee who, Stephen Thomas violated his duty of loyalty to the ESOP under ERISA § 404(a)(1)(A).

**ANSWER:** Paragraph 51 is denied.

## **AFFIRMATIVE DEFENSES**

### Affirmative Defense One

52) The Complaint fails to state a cause of action against Stephen Thomas individually and/or as a Trustee of Gagne Precast Concrete, Inc. Employee Stock Ownership Plan upon which relief may be granted.

### Affirmative Defense Two

53) The Complaint and each of its alleged causes of action are barred in that all of Stephen Thomas's actions and decisions both individually and as a Trustee of Gagne Precast Concrete, Inc. Employee Stock Ownership Plan were a just and proper exercise of management discretion, undertaken for a fair, honest and legitimate business reason, and regulated by good faith under the circumstances then existing.

### Affirmative Defense Three

54) Stephen Thomas has not breached any duty owed to the Plaintiff, any of the employees of Gagne Precast Concrete, Inc. or any of the participants of the Gagne Precast Concrete, Inc. Employee Stock Ownership Plan.

### Affirmative Defense Four

55) The Plaintiff's claims are barred by the applicable statute of limitations.

### Affirmative Defense Five

56) The Plaintiff failed to exhaust all administrative remedies before filing this Complaint before this Honorable Court.

Affirmative Defense Six

57) Stephen Thomas both individually and as a Trustee of Gagne Precast Concrete, Inc. Employee Stock Ownership Plan reserves the right to assert additional defenses and amend this answer due to of the conclusory and nonspecific nature of many of the allegations in the Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant, Stephen Thomas, individually and as a Trustee of Gagne Precast Concrete, Inc. Employee Stock Ownership Plan denies that the Plaintiff is entitled to relief sought, or any relief whatsoever, and respectfully requests that this Honorable Court enter judgment in his favor against the Plaintiff on its Complaint.  In specific:

1)  That the Complaint be dismissed in its entirety with prejudice.

2)  That the Plaintiff be denied each and every demand and prayer for relief contained in the Complaint, including claims for liquidated, exemplary, and/ or punitive damages, attorneys' fees, expert fees and costs.

3)  That the Defendant be awarded his fees and costs, including reasonable attorneys' fees and expert fees as the law may allow.

Respectfully Submitted,

*s/ Kevin E. Reed, Esq.*
Kevin E. Reed: TN 018430
Attorney for the Defendant
136 Marrakesh
Memphis, Tennessee 38103
Phone: 901-634-2733
kevinereed@gmail.com

*s/ Tiffany L. Robinson, Esq.*
Tiffany L. Robinson: PA 207375
Attorney for the Defendant
Robinson & Geraldo, PC
2505 North Front Street, 2nd Floor
Harrisburg, PA 17110
Phone: 717-232-8525
trobinson@robinson-geraldo.com

## **Certificate of Service**

I, Kevin E. Reed, certify that a copy of the forgoing was served on Attorney Scott Miller of United States Department of Labor, Office of the Solicitor, via this Court's electronic filing system on 29th day of April, 2011.

*s/ Kevin E. Reed*